Good morning. May it please the Court, Michael Tanaka, Deputy Federal Public Defendant, apparently known by Ethel, petitioner of Clementa Lopez. This case involves actually a determination of sanity. Mr. Lopez was found sane after a second sanity trial, after committing a crime that obviously had some aspects of it that suggested he was not sane. That is, he went and shot a man for no apparent reason just a few hours before he had appeared at a hospital trying to obtain a lethal prescription for an antipsychotic drug and referred to the nurse there as determining that he was a danger to himself and others and should be involuntarily committed. Of course, he wasn't, and he went on and shot a person. The particular issue, though, is whether at the State Court second trial on sanity, the State Court erred in excluding what was critical evidence on this issue, and most particularly the testimony of Mr. Lopez's sister. Defense counsel tried to elicit testimony from his sister that Mr. Lopez heard the voices of dead people who had come back to life. Now, this was really important because Obviously, if Mr. Lopez believed that dead people, particularly ones that he had killed in this case, had come back to life, it would bear on the issue of whether he knew right from wrong. Obviously, someone who believes that if you kill someone, they come back to life might have a little problem with that concept. Now, here there had been a couple doctors, psychiatrists, testifying. One said that if he actually believed that, that would show that he was probably insane. They discounted that testimony, saying that the defense doctor hadn't accounted for malingering, that is, that Mr. Lopez might have been faking his symptoms. So why this was important was because this was the only evidence in the case that would have shown that prior to the interviews of these doctors, Mr. Lopez had reported that he heard the voices of dead people coming back. He heard voices, right? Of dead people who had come back to life. Yeah. That brings us to the particular issue in this case, which is whether the California court's decision finding no error here, only because it hadn't been preserved, one, was a valid procedural default, and secondly, whether the district court was correct in dismissing the case and also not reaching the merits of this issue. That is, the California court didn't reach the merits of the issue because it found that trial court at the trial had not properly lodged a proffer of what the evidence was. And then the district court found that this issue had been defaulted properly. Now, I'll just say that. Has any court ever ruled that it was erroneously denied admission? I'm sorry, Your Honor. Has any court said that, well, this was state of mind and should have been admitted? No. No. No court has said that. They just always say, well, we can't entertain this claim because it's default. That's right. And it's clear under California law that whether this is characterized as non-hearsay because it's obviously not admittable of the truth, that is, that dead people come back to life. Well, there's a second truth that they argue about, that he believes dead people. Yeah. Well, then if that under – it wasn't actually totally clear to me under California law that this was inaudible of the truth, but it was inaudible of the truth, then they would have to show it to the state of mind, which – whether they would consider it non-hearsay or if hearsay, obviously under California law, it's admissible to show his belief, the state of mind, because that was relevant admission. Right. But nobody has said that yet because you never got that far. Right. So no one – I think the State would not argue that ultimately the statement was inadmissible as hearsay. It clearly was admissible in this case because it went to the precipient issue case. But no court got to that point. No court to reach that issue. All right. All right. So the issue in this case, then, is did the district court – was the district court correct in finding that the issue had been defaulted? And we contend that, of course, not, that under California law, what defense counsel did in this case was more than adequate to preserve the issue. California requires only the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked and offer approved or by any other means. Here, defense counsel very clearly indicated why he wanted the evidence. He wanted the evidence as lay evidence that Mr. Lopez had reported this hearing voice as in his belief to his sister as the same type of evidence that was Mr. Lopez reported to the psychiatrist that the court knew clearly what the purpose of this evidence was, but he said, no, it was hearsay. But the purpose, substance, and offer was clearly adequate to make the trial judge aware of why he wanted the evidence admitted, and that's all that's required in the California law. The California Court of Appeals cited a case, Ramos's case, where the upholding of a default or a waiver of the issue where counsel asked for a question that clearly called for hearsay, but there was no sense in the question why he wanted to answer that or what he expected that issue to bear on. Here, that's not the case. It was obvious to all why he asked the question, why it was important in the case, and what the issue was. So the case Ramos cited by the California Court of Appeals is totally inept. So if we agreed with you, we would have to say, well, the State court said it was defaulted. That's correct. And that, what's wrong with that ruling? Is it that it's not, it's a rule that hasn't been consistently applied or it was just the State court's ruling that it's not a rule that's consistent with the State law? It's just a rule that's not consistent with the State law? Yeah. I mean, obviously, if it's a ruling that's not even correct under California law, it would be hard to say that it's regularly and consistently applied because then what you'd be saying is that California regularly and consistently applies it. The district court should have considered the claim on the merits, which it did not. And the underlying claim, obviously, is that, yes, exclusion of this evidence did give rise to a violation of constitutional law, and that is under Chambers and Brain v. Kentucky that had a right. The original objection was hearsay, and the point made by counsel was arguably that it's state of mind. Is that right? Right. He said it's not for the truth, the matter stated, and he proffered to defend it so people can come back to life, and if they get killed, it was not meant to happen. OK. So we're still arguing the hearsay question. I guess what I'm saying is the state law really has two questions. The state court, rather, has two questions. One was a state law of evidence raised properly, and another would be is some violation of a constitutional right raised properly. I gather when it got to the state appellate court, there was mention in the appellate's brief of the constitutional right, and it just wasn't addressed by the state court. That's correct, Your Honor. The state court said that the issue hadn't been properly preserved and wasn't going to reach the underlying constitutional claim. Now ---- So it was derivative in a way in the state, the way the state viewed it. They did make some mention that because in the state court, appellate counsel also raised alternatively as an ineffective assistance of counsel claim if the court of appeal determined that the issue hadn't been properly preserved, and they said enough to say that they didn't believe it was ineffective assistance of counsel. But even in doing that, they didn't reach the underlying constitutional claim that's being raised in the federal petition. It's clear that the evidence was admissible. It's clear that it was important, and it would have made a difference in this case because this was a closed case. As the facts show, Mr. Lopez had a long and undisputed history of serious mental problems. This was the second trial. The first trial actually heard the facts of the guilt phase, deadlocked on the issue of sanity. The initial vote on sanity was 11 to 1, finding him insane. After a re-argument of the case, they deadlocked again, and they reported their vote as 6 to 6, 6 finding him insane and 6 finding him sane. And one can't read the facts of this case and understand that there was a substantial and close question as to whether Mr. Lopez was insane. So that then resolves down to whether it was essentially a battle of the experts, and the biggest point scored by the prosecution's expert is that Mr. Lopez was malingering, that he wasn't as bad as he thought, and that he wasn't as crazy as he portrayed himself. And this evidence went directly to that question. I would like to reserve the remainder of my time if I may. Yes, Your Honor. Good morning, Your Honors. May it please the Court. Deputy Attorney General Gary Lieberman for Respondent, FLE. I'm going to address the issues in a different order than Appellant's counsel did. First, the issue of whether the California procedural bar is adequate to begin with. And under Bennett, which is the burden-shifting process that a court looks to, the interim burden by the Petitioner is that he must make factual allegations or citations to authority that demonstrate inconsistent application of the rule and demonstrate his language that's in the Bennett decision. And the only case that Mr. Lopez refers to is the California Supreme Court case in Kuntz to show that evidence code section 354 is not consistently applied. And Kuntz certainly did not do that in my position. In Kuntz, there was a basis for admissibility that was offered in the trial court, and the California Supreme Court found that that, what was stated in the trial court, was sufficiently similar to the argument advanced on appeal in order to preserve the issue. In Ramos, which applied section 354 to hearsay exceptions, there was no proffer as far as the purpose of the evidence. There was no offer of proof, there was no citation to a hearsay exception. So turning to our case, it was totally unclear. There was no clear purpose for referring to Ms. Prockenpeck's testimony, who was the sister of the Mr. Lopez, of the purpose of the testimony. The defense counsel indicated that it was not being offered for its truth, but didn't give any indication as to how it would be relevant if not for its truth. Now, something that appears critical to me is, well, first of all, I'm sorry, let me back up. The argument by appellant, as I understand it, that the sister's testimony is critical, is that she, that Mr. Lopez reported this belief of dead people coming back to life to the sister at some point prior to the offense, prior to being interviewed by the psychologists, and prior to having a motivation to malinger. But there's no evidence in the record at all as to the timing that any such statement was made to the sister. The crime occurred in March of 98, and the second sanity trial occurred, I believe, in, it was 2000, I believe it was July of 2000. So it is entirely plausible that this statement was made by the defendant to the sister at some point during that two-year period, so it wouldn't have the critical importance that defense counsel attaches to it. And there was no offer of proof as to the timing of the statement. And so, therefore, even assuming, well, if moving from the adequacy of the State procedural bar to whether cause and prejudice has been established in order to excuse the waiver, that there's been no, that Mr. Lopez has not satisfied his burden of establishing the prejudice prong of an ineffective assistance of counsel claim because there's no evidence as to that statement being made at the relevant time, i.e., before the motive to malinger would have began. But also, even more importantly, there's no, there's one thing that also jumped out at me, that there's a lack in the evidence, that the belief by Mr. Lopez was that he believes that the dead can come back to life, and if someone gets killed and it's not meant to happen, that they can come back. And that was the offer of proof that was made by defense counsel, and defense counsel was referring in turn to the report of the psychologist, and that was in the report of the psychologist. But there was no evidence that Mr. Lopez believed that Mr. Collins' death, Mr. Collins being the victim, was not meant to happen. So for that reason as well, there's a complete gap in the evidence to show that Mr. Lopez believed that after killing Collins, he was going to come back. There's no evidence that Mr. Lopez believed that the death was not meant to happen. So that was in reviewing things for oral argument, that was something that kind of jumped out at me. Of course, I suppose it, if he believed it, even if it turned out not to apply to Mr. Collins, it would be some evidence, it seems to me, of insanity. At least, you know, it's rare that people come back. Well, I think then, I think, you know, I think, you know, then I guess, you know, it looks so far as there's a number of celebrities, and reincarnation is not a, it's certainly not an unpopular viewpoint. And I think that just because Mr. Lopez may believe in reincarnation doesn't mean that he doesn't understand that under society's rules that shooting somebody is wrong. Yeah. But he's entitled to say that this is one indication that he's unbalanced. That is true. And the jury heard that through the testimony of the expert. But also the jury heard other things, too. So this, so the jury also heard other evidence of sexual belief prior to the offense, separate and apart from what the sister might testify to. First of all, the sister, in addition to being allowed to testify to her observations of Mr. Lopez, Mr. Lopez having hallucinations and so forth, she was also allowed to testify that she had known him to have psychotic beliefs. So that came in. And the specific question and answer, there was no hearsay objection to that question, but the specific question was, have you ever known him to suffer from having false psychotic beliefs? Answer, yes. And that's in the supplemental excerpts of record at page 29. So there was evidence by the sister that Mr. Lopez, in fact, had held psychotic beliefs. And also, which I believe is significant, what came in through the testimony of the experts was a 1990 prison record. And the crime in this case occurred in 1998, in which Mr. Lopez reports hearing the voice of a friend who died hanging on a fence. And I pointed this out in my brief at page 41. So he's hearing voices, so Mr. Lopez started hearing voices of a friend of his who died hanging on a fence. So there was evidence of this belief of the dead continuing on after life prior to the offense. So basically then, even assuming that the sister would have testified that Mr. Lopez told her of his belief prior to the offense, that evidence would have been cumulative of other evidence, and there's no reasonable probability of a different result had that testimony been allowed. But it's Mr. Lopez's burden to establish admissibility, and it's Mr. Lopez's burden to establish ineffective assistance of counsel. And without any evidence of the timing of that statement, they cannot make that showing. Now, just to briefly address the other item of evidence that was excluded, which was Mr. Heiserman's proposed testimony, that Mr. Lopez didn't have any, the day after the shooting, Mr. Lopez didn't have any, or appeared not to have any recollection of what had happened the day before. You know, here, there was no explanation, there was no offer of proof at all by defense counsel as to how this evidence was relevant for a non-hearsay purpose. There was no hearsay exception cited. There was no offer of proof whatsoever. But even, but assuming for the sake of argument that that was ineffective assistance of counsel or deficient performance, in order to establish cause and prejudice, in order to overcome the procedural default, the, Mr. Lopez can't establish a reasonable probability of a different result. He can't establish the prejudice prong of the Strickland, of the Strickland test, because there was other evidence that after the offense, Mr. Lopez was disoriented as to what had been going on. And specifically, that was the testimony of Detective Oppelt, who interviewed him two days after the offense. And certainly also, I would add, that just because you may not remember what you did the day before, doesn't mean that the day before you knew what you did was wrong. And lastly, I'll just leave the court, that there was other evidence of knowledge of wrongdoing, other than Mr. Lopez not returning to get his wallet. There was the, is obviously his initial leaving of the scene, and as the prosecutor argued in closing argument, he concealed the weapon, or there was concealment of the weapon, which is much more powerful evidence of knowledge of wrongdoing. So with that, Your Honors, unless the court has any questions, I'll submit the matter. No questions. Thank you, Counsel. Mr. Tanaka, you have some reserved time. I just want to address two points. One, the State has argued that this case is different than, well, let me go back. The State has argued that the California court was correct in finding the issue not preserved for appeal based on Rommel's, and characterizes Rommel's as the case where they found the issue weighed because counsel had not proffered the substance of the testimony. Here, there's a, if you read the colloquy between defense counsel and the court, there's a clear proffer of what he wanted to testify to, what he wanted the sister to testify to, and that's essentially the evidence that was contained in the psychiatrist's report, which the court admitted was relevant and would allow through the psychiatrist. Again, the point, the salient point being, which brings me to the second point, is that the reason this is important is because the sister's testimony, presumably, would have covered time before the motive to malinger, that is, the shooting of Mr. Collins and the attribution of the motive by the prosecution psychiatrist that he wanted to avoid a life sentence that he got. Kennedy, where the expert witnesses cross-examined about what they had, the information they had about his hearing, the defendant hearing voices and hallucination and so on that the sister had, would have testified to. Yes, there was cross-examination. And they were, they were, this was the second sanity trial, wasn't it? That's correct, Your Honor. And were the same witnesses in both trials? Essentially. And they both knew what the question was, not, not did this defendant hear voices or think he did, but whether he knew the difference between right and wrong. That's correct. And they spent a lot of time on that and were cross-examined about all this stuff about hallucinations and so on. So what, what is the prejudice in, in what may have been an erroneous ruling on a hearsay evidence question, which we've never found to reach the constitutional level yet, I don't think. We have found erroneous inclusion of evidence to reach the constitutional level, but the prejudice is simply this. This was a very closely balanced case. It was essentially a battle of the experts, not the prosecution expert against the defendant. Well, the real question is what institution is best placed for this man, not all this arcane hullabaloo about hallucinations and so on is really irrelevant. The question is which, he's not going to be out running around. The question is what kind of an institution is the best place to put him. That's correct. And so the issue is whether he belongs in an institution where, a secure institution where he's going to be treated for his mental disabilities or he belongs in prison. The question is whether he belongs in an institution where he's going to be treated   for his mental disabilities or he belongs in prison. Well, everybody, everybody in the courtroom knew he had schizophrenia, didn't they? Everyone, yeah, there was, there was no dispute that he suffered serious mental problems. The dispute was to what effect did those serious mental problems impact his actions at the time of this offense. And we contend that if this evidence had been admitted, it would have borne on that question. Thank you, counsel. The case you just argued will be submitted for decision. And we will hear argument next in the city of Colton versus American promotional events.
judges: Goodwin, Canby, O'Scannlain